IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CLOSET COMPANY, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>J. MARK EBBEN, an individual; and EBBEN ENTERPRISES, INC., a Wisconsin corporation,<br><br>　　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　／ | No. C 08-0625<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER VENUE** |

Defendants have filed a motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue. The motion is currently scheduled for hearing on April 18, 2008. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument, and VACATES the hearing. Having considered the papers submitted, the Court hereby DENIES defendants' motion.

## BACKGROUND[1]

Plaintiff California Closet Company ("CCC") is a California corporation with its principal place of business in San Rafael, California. CCC is the owner and franchisor of operating systems for franchised businesses specializing in the design, marketing, construction, and installation of customized residential and commercial storage spaces. Plaintiff is the owner of the "California Closets" name and mark.

In May 1987, plaintiff entered into a franchise agreement with James Damrau and Sally Damrau

---

[1] Unless otherwise cited, the facts have been taken from the complaint. Any factual disputes are noted.

("the Damraus"). The franchise agreement was executed in California. Mar. 3, 2008 Ebben Decl., Ex. A at 56. Pursuant to the agreement, plaintiff granted the Damraus a franchise to operate a California Closets business within a specified territory in Appleton, Wisconsin, together with a limited license to use the CCC marks in connection therewith. The franchise agreement and "all matters relating to the validity, construction, performance, and enforcement thereof" are expressly governed by California law, and the agreement is binding upon the parties' successors and assigns. Mar. 3, 2008 Ebben Decl., Ex. A at 55.

On April 20, 1990, plaintiff, defendant and the Damraus negotiated and executed plaintiff's consent to the assignment of the franchise agreement to defendant Mark Ebben ("Ebben"). Mar. 3, 2008 Ebben Decl. ¶ 2. Defendants assert, and plaintiff does not dispute, that Ebben negotiated and executed this agreement in Wisconsin. Apr. 4, 2004 Ebben Decl. ¶ 6. However, it is not clear from the record whether plaintiff traveled to Wisconsin or whether the negotiations took place by phone and fax while plaintiff remained in California. On April 26, 1990, the Damraus and Ebben entered into an Assignment Agreement/Sale of Franchise whereby the Damraus assigned their rights and obligations under the franchise agreement to Ebben.

On December 11, 1992, Ebben formed defendant corporation Ebben Enterprises, Inc. ("EEI"), which maintains its principal business offices in Wisconsin and does not do business in California. Mar. 3, 2008 Ebben Decl. ¶ 3. EEI is the operating entity for Ebben's California Closets franchised business in Appleton, Wisconsin. The franchise agreement between plaintiff and defendant Ebben was renewed in 2000 and is not set to expire until May 7, 2010.

Under the franchise agreement, defendants agreed to pay plaintiff a monthly royalty and to submit monthly reports of gross revenues. Defendants send all payments to plaintiff in California. Barton Decl. ¶ 7. Ebben sends and receives virtually all communications (phone calls, emails, and letters) to and from plaintiff's San Rafael, California headquarters. Barton Decl. ¶ 7. These communications include product orders placed by defendant. *Id.*; Apr. 4, 2008 Ebben Decl. ¶ 4.

The franchise agreement also provides that plaintiff can visit defendants' business for the purpose of inspecting the merchandise and equipment on hand, inspecting the nature and quality of goods sold and services rendered, observing defendants' manner and method of operating the shop, and

examining and auditing defendants' books and records. A CCC representative has visited defendants' franchise store four times between 1991 and 2007. Apr. 4, 2008 Ebben Decl. ¶ 2.

The franchise agreement provides that the design and appearance of the exterior and interior of the shop building are part of CCC's indicia, and that defendants will make no change, addition, or alteration of any kind to the structural elements of the shop building or to the adjacent areas without plaintiff's prior written consent. The standards and procedures which govern the operation of all plaintiff's franchises, including defendants' franchise, are established in California and communicated to the franchisees from California. Barton Decl. ¶ 7.

Defendants have not traveled to California in approximately ten years, do not own or lease real or personal property in California, do not have any agents, representatives or employees that reside in California, do not generate any revenue from business in California, and do not have any business or personal bank accounts in California or have a mailing address or a telephone listing in California. Mar. 3, 2008 Ebben Decl. ¶¶ 5-10.

On January 28, 2008, plaintiff filed a complaint listing eight causes of action including specific performance to audit defendants' financial books and records; breach of contract; trademark infringement under 15 U.S.C. § 1114 and state common law; unfair competition under 15 U.S.C. § 1125(a), California Business and Professions Code § 17220, and state common law; dilution under California Business and Professions Code § 14330 and state common law; and an accounting. Plaintiff alleges that defendants are operating a competitive business named "Closet Works" at the same location as their authorized California Closets franchised business, and are wrongfully using the CCC marks in connection with the operation of their "Closet Works" business. Plaintiff also alleges that defendants have refused to allow plaintiff to audit defendants' financial records pursuant to an email sent to plaintiff in California on November 20, 2007. Barton Decl. ¶ 8.

On March 3, 2008, defendants filed a motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, a transfer of venue for *forum non-conveniens*.

///

**DISCUSSION**

**I.    Personal jurisdiction**

If a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant. *See Doe I v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (per curiam). However, without an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdiction to avoid the motion to dismiss. *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). That is, the plaintiff must present facts which, if true, establish jurisdiction. *Id*. "Unless directly contravened, [plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id*. *See also Unocal*, 248 F.3d at 922; *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

Where, as here, there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state in which the court sits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1129 (9th Cir. 2003). Accordingly, the Court need only determine whether the exercise of personal jurisdiction over defendant comports with due process. *See id.*

Personal jurisdiction over a non-resident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1946). Plaintiff does not dispute defendants' assertion that the Court cannot exercise general jurisdiction over defendants. As to specific jurisdiction, the Ninth Circuit employs a three-part test to determine whether a court may exercise specific jurisdiction over a defendant. First, the defendant must purposefully direct his activities to the forum state, consummate some transaction with the forum or resident thereof, or purposefully avail himself of the privileges of conducting activities in the forum state, thereby invoking

the benefits of the forum state's laws. *Harris Rutsky*, 328 F.3d at 1129. Second, the plaintiff's claim must arise out of the defendant's forum-related activities. *Id*. Third, exercising jurisdiction must be reasonable. *Id*.

### A. Purposeful availment

Defendants argue that defendant Ebben has not purposefully directed any activity towards California because he runs and operates his business in Wisconsin, and any potential harm to plaintiff's intellectual property would occur in Wisconsin. Plaintiff counters, and the Court agrees, that where defendants have entered into a contractual relationship which created continuing obligations between defendants and a California corporation, and have allegedly committed torts the effects of which were allegedly felt in California, defendants have purposely directed activity towards the forum state.

The Ninth Circuit typically analyzes "purposeful availment" differently in tort and contract cases. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). In tort cases, courts apply "an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id*. In contract cases, the inquiry is "whether a defendant purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Id*. (internal quotation marks, brackets, and citation omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)) (" . . . with respect to interstate contractual obligations . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."). Here, the complaint contains both tort and contract claims.

The Court finds that the first element of the specific jurisdiction test is met under both the tort and the contract analyses. Under the contract analysis, defendants have formed a long term franchise relationship with plaintiff, a California corporation, that is expressly governed by California law. This is sufficient to establish "purposeful availment" because "physical contacts in the forum are not required." *Corporate Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 789 (9th Cir. 1987). In *Melcher*, an

5

Arizona franchisor brought an action against Colorado residents in Arizona state court for breach of a franchise agreement. *Id.* at 787. Like defendant here, the *Melcher* franchisee was licensed to use the franchise trademark for several years, was required to pay an initial fee plus royalties based on gross sales, and had to submit periodic reports. Like plaintiff here, the *Melcher* franchisor provided a training program and an operations manual. Like the franchise agreement here, the franchise agreement in *Melcher* contained a choice-of-law provision governing any dispute arising under the agreement. The Ninth Circuit stated in *Melcher* that "there could be no question but that [the franchisee] in forming a long-term franchise relationship with [the franchisor] 'purposely directed' commercial activities to Arizona, thereby 'purposely availing' itself of Arizona benefits." *Id.* at 789. Accordingly, the Court finds that the long term franchise relationship between the parties, along with the choice-of-law provision in the franchise agreement, is sufficient to meet the "purposeful availment" test. *See also Ballard v. Savage*, 65 F.3d 1495, 1498-99 (9th Cir. 1995) (finding sufficient contacts to establish "purposeful availment" when defendant had numerous ongoing obligations to forum residents, regularly mailed account statements to forum residents, and occasionally solicited new business from them).

Defendants also meet the tort "effects test." The "effects test" is satisfied if the defendant is alleged to have "(1) committed an intentional act; (2) expressly aimed at the forum state; and (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206. Plaintiff alleges that defendants committed the intentional torts of trademark infringement and unfair competition by intentionally using the CCC Mark in connection with the operation of defendants' "Closet Works" business, that defendants' actions were expressly aimed at California because they targeted a plaintiff whom defendants know to reside in California, and that the harm resulting from defendants' alleged unfair use of the trademark and unfair competition is felt by plaintiff in California.[2] Plaintiff's allegations are sufficient to show that defendants purposefully directed activity to the forum

---

[2] Defendants argue that plaintiff has failed to meet its burden of setting forth sufficient facts to show harm in California. However, a factual showing is not required at this time; plaintiff need only allege harm. *See Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007) (finding plaintiff had sufficiently *alleged* the three requirements of the "effects test") (emphasis added). Plaintiff specifically alleged in the complaint that defendants' alleged improper use of the CCC Mark and alleged unfair competition has injured plaintiff in its business, goodwill, and reputation, and unless enjoined, defendants continued conduct will cause future harm. Complaint ¶¶ 43-45, 48-50.

state. *See Yahoo! Inc.*, 433 F.3d at 1210-11; *Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007) (noting that the "expressly aimed" requirement is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state"); *Harris Rutsky*, 328 F.3d at 1131 ("effects test" met when plaintiff alleged defendant committed an intentional tort against plaintiff, defendant knew plaintiff was a California resident, and harm was felt in California because plaintiff was a California corporation with its principal place of business in California).

### B. Claims arising out of defendants' forum-related activities

The Ninth Circuit applies a "but for" test to determine whether a claim arises out of or results from a defendant's forum-related activities, the second requirement for specific jurisdiction. *Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir. 1995) (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)). Defendants argue that this requirement has not been met because neither Ebben nor Ebben Enterprises has had any activities in California, and no harm has been directed towards California.

Plaintiff argues, and the Court agrees, that because plaintiff's claims arise directly out of the parties' franchise relationship, the second requirement is satisfied. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) ("It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."); *Melcher*, 824 F.2d at 789-90 ("Because CIBB's claims arise out of this [franchise] agreement, this element of the jurisdiction test is satisfied."); *Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474, 1480-81 (9th Cir. 1986) (second requirement met because claims arose out of defendant's alleged breach of the contract which constituted defendant's contacts with California).

### C. Reasonableness

Once minimum contacts with the forum have been established, the Court must determine whether adjudication within the forum is reasonable. *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985). The Ninth Circuit weighs seven factors to determine reasonableness:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Harris Rutsky*, 328 F.3d at 1132.

First, defendants argue that there is no purposeful interjection because defendants did not direct any activity towards plaintiffs in California.[3] Plaintiff argues that defendants have purposefully interjected into the forum state's affairs by operating the franchised business for eighteen years during which time defendants have had numerous and substantial contacts with plaintiff in California.[4] Based on the requirements of the franchise agreement, the assignment agreement, and the parties' sworn declarations, the Court finds a significant degree of purposeful interjection into the forum state's affairs. The franchise agreement requires defendants to submit monthly royalty payments and monthly and annual reports to plaintiff in California, Mar. 3, 2008 Ebben Decl., Ex. A at 30-31. The franchise agreement also requires defendant to design and maintain its premises, advertise and promote, price its products, and operate during business hours determined by plaintiff in California. *Id.* at 23-26. The consent to the assignment agreement requires defendants to participate in plaintiff's training or orientation programs, *id.* at 9, and requires defendants to travel to California to settle any controversy or claim arising out of the assignment agreement, *id.* at 11. Finally, defendants concede that plaintiff, albeit infrequently, monitored the quality standards of the products sold by defendants. Apr. 4, 2008 Ebben Decl. ¶¶ 2-3. Accordingly, the Court finds the first factor weighs in plaintiff's favor.

Second, defendants argue that litigation in California will unreasonably burden defendants because it will require the transportation of witnesses and physical evidence from Wisconsin to

---

[3] Defendants also argue that there is no purposeful interjection because Mr. Ebben did not intend to attack the trademark in California and any alleged violations or infringements were negligent. However, this goes to the merits, and for purposes of personal jurisdiction analysis, the Court takes plaintiff's allegations of intentional conduct as true.

[4] Plaintiff also argues that the Ninth Circuit gives the purposeful interjection factor no weight once "purposeful availment" has been shown, citing *Melcher*, 824 F.2d at 790. However, the Ninth Circuit has since stated that the purposeful interjection element must still be considered. *Harris Rutsky*, 328 F.3d at 1132; *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993)

8

California, and because Ebben Enterprises, Inc. is a small franchise and not a large business operation generating substantial amounts of money. Plaintiff argues, and the Court agrees, that any claimed inconvenience defendants might suffer from travel does not rise to the level of a due process violation. While there is no dispute that potential witnesses and evidence are located in Wisconsin, plaintiff's witnesses and documentation relating to the franchise agreement are located in California, thus this factor does not significantly favor defendants. Furthermore, the burden of traveling to a forum to litigate is "no longer weighed heavily given the modern advances in communication and transportation." *Harris Rutsky*, 328 F.3d at 1133; *see also Melcher*, 824 F.2d at 790 (finding burden reasonable when travel from defendant's location to court would only take hours by air and defendant would have to be away from his business to attend trial regardless of where the trial was held); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (holding that although the burden on an individual living in Illinois to litigate in California is significant, "the inconvenience is not so great as to deprive him of due process"). Defendants have not alleged that their small franchise cannot afford to litigate in California or pointed to any other circumstances that would make the transportation of witnesses and evidence so burdensome as to affect defendants' ability to defend in California. Accordingly, because each party would be burdened by litigating in a different forum, the Court finds this factor to be neutral.

With regard to the third factor, conflict with state sovereignty, defendants do not dispute it and the Court finds it to be neutral. On the fourth factor, defendants argue that California has a minimal interest in adjudicating this suit because the majority of the issues concern federal law. However, only two of the eight causes of action are federal claims; the remaining claims arise out of California law. Moreover, as plaintiff points out, "California maintains a strong interest in providing an effective means of redress for its residents who are tortiously injured." *Harris Rusky*, 328 F.3d at 1133 (internal quotation marks, citation, and noted alterations omitted). Similarly, "California has a strong interest in assuring that contracts made with its residents are not breached . . . ." *CFA N. Cal., Inc. v. CRT Partners LLP*, 378 F. Supp. 2d 1177, 1187 (N.D. Cal. 2005). Here, plaintiff is a California corporation whose principal place of business is in California. Accordingly, the Court finds this factor weighs in plaintiff's favor.

Fifth, defendants argue that the most efficient resolution of the suit would be in Wisconsin where

9

the witnesses and evidence are located. As discussed above, there is no dispute that most witnesses and evidence are located in Wisconsin. Therefore, this factor favors defendants. However, "this factor is no longer weighed heavily given the modern advances in communication and transportation." *Harris Rutsky*, 328 F.3d at 1133 (internal quotations and citation omitted).

Sixth, defendant argues that plaintiff can obtain convenient and effective relief in any forum, including the Eastern District of Wisconsin. Plaintiff counters that litigation in California is important to ensure the consistent application of California law to its franchise agreements. Because plaintiff has shown more than "a mere preference" for litigating in its home state, the Court finds that the importance of the forum to the plaintiff's interest in convenient and effective relief weighs in favor of plaintiff. *See id.* ("[N]o doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference.") (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991)); *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995) ("'A mere preference on the part of the plaintiff for its home forum does not affect the balancing [.]'") (quoting *Roth*, 942 F.2d at 624).

On the last factor, defendants argue that Wisconsin is an adequate alternative forum. While this is true, the Court finds that litigation in Wisconsin is not necessary because on balance, defendants have failed to "present[] a compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice." *Harris Rutsky*, 328 F.3d at 1134. Accordingly, the Court DENIES defendants' motion to dismiss for lack of personal jurisdiction.

## II.   Improper venue

Federal Rule of Civil Procedure 12(b)(3) provides for the dismissal of an action for improper venue. Fed. R. Civ. P. 12(b)(3). When venue in a particular district is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transmission Sys., Inc. v. Martino*,

10

36 F.3d 291, 294 (3d Cir. 1994). However, section 1391(b)(2) " . . . does not require venue in the district with the most substantial contacts to the dispute. Rather, it is sufficient that a substantial part of the events occurred in the challenged venue, even if a greater part of the events occurred elsewhere." *Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 352 (S.D.N.Y. 2003) (citing *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir.1992)); *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000).

Defendants argue that the case should be dismissed for improper venue because all of the alleged improper conduct occurred in Wisconsin, and defendants reside in Wisconsin. However, all of plaintiff's claims arise out of the franchise agreement or the franchise relationship, which, as discussed above, have significant contacts with California in the Northern District where plaintiff's principal place of business is located. The Court finds these contacts sufficient for venue in the Northern District of California. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (finding Nevada venue proper in a tort action when at least one of the "harms" suffered by plaintiffs was felt in the forum); *Kirkpatrick v. Rays Group*, 71 F. Supp. 2d 204, 213 (finding New York venue proper in a contract action when resulting injury was felt in New York, defendant sent bills to New York, and plaintiff sent correspondence and made telephone calls to defendant from her New York office); *Schomann Intern. Corp. v. N. Wireless, Ltd.*, 35 F. Supp. 2d 205, 213 (N.D.N.Y. 1999) (finding New York venue proper in a contract action when performance of contract occurred outside New York because purchase orders and payment requests were sent to New York, payments were made from New York, New York plaintiff regularly supervised defendants' performance under the agreement and requested that periodic status reports be sent by defendants to New York). Accordingly, the Court DENIES defendants' motion to dismiss for improper venue.

### III.    Transfer of venue

28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of 28 U.S.C. § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary

inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Factors a court may consider include:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis.

*Id.* at 498-99. "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 845 F.2d at 853.

Defendants have stated that they are amenable to process in the Eastern District of Wisconsin, and plaintiff does not dispute this venue, thus the Court find the Eastern District of Wisconsin to be an available alternative forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981).

The Court must next consider whether transfer is appropriate. Here, plaintiff's choice of forum and its strong interest in having a court familiar with California law adjudicate its claims to ensure a consistent application of the law to plaintiff's franchise agreements weighs strongly in plaintiff's favor. On the other hand, although plaintiff's documents and witnesses are located in California, more of the relevant witnesses and sources of proof related to trademark infringement, unfair competition, and breach of contract are located in Wisconsin, which weighs in favor of defendants. The Court finds the remaining factors either neutral or irrelevant.[5] On balance, the Court finds that defendants have failed

---

[5] Although the original franchise agreement was executed in California, it was not executed by defendants but by their predecessors. Defendant Ebben negotiated and executed the assignment of the franchise – which binds defendants to the original franchise agreement – in Wisconsin. It is not clear from the record whether plaintiff traveled to Wisconsin or remained in California during the assignment negotiations. Because defendants are bound by the original franchise agreement which was executed in California, but negotiated the assignment in Wisconsin, the Court finds this factor does not weigh in favor of either party. As discussed above, defendants have significant contacts with California through the franchise agreement, but plaintiff's contacts with Wisconsin are equally significant through the franchise agreement. Accordingly, the Court finds this factor to be neutral as well. As to the differences in costs, both parties have retained counsel who have offices close to each forum, and the financial burden on the parties to litigate in either forum does not appear to differ significantly. Thus, the Court

to meet their burden of making "a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *See Decker Coal*, 845 F.2d at 853 (noting that transfer would merely shift rather than eliminate the inconvenience). Accordingly, the Court DENIES defendants' motion to transfer venue.[6]

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES defendants' motion to dismiss or transfer venue. [Docket No. 12].

**IT IS SO ORDERED.**

Dated: April 15, 2008

SUSAN ILLSTON
United States District Judge

---

also finds this factor to be neutral. Similarly, both parties have the ability to compel witnesses to appear by subpoena in either forum. Finally, there is no forum selection clause in the contract, so this factor does not apply.

[6] Defendants assert in their reply transfer is warranted because under Wisconsin law, choice of law provisions are not enforceable, thus this case would be subject to Wisconsin's Fair Dealership Act. Defendants cite to *Cutter v. Scott & Fetzer Co.*, 510 F. Supp. 905 (E.D. Wis. 1981), as support. However, *Cutter v. Scott* only addressed a forum selection clause which the court found unenforceable, and then applied Wisconsin law. A choice of law provision was not at issue in that case, and the Court finds defendants' assertion meritless.

13